THE COCA-COLA COMPANY *et al.*, Plaintiffs, *v.* A. EPSTEIN AND SONS INTERNATIONAL, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellants.—(APPROVED ROOFING AND SHEET METAL COMPANY, INC., Third-Party Defendant-Appellee; CROWTHER, INC., *et al.*, Third-Party Defendants.)

First District (2nd Division)    No. 79-1732

Opinion filed September 23, 1980.—Rehearing denied October 22, 1980.

William I. Goldberg and John H. Ward, both of Antonow & Fink, of Chicago, for appellants.

Franklin P. Auwarter and Herbert J. Sue, both of Mayer, Brown & Platt, of Chicago, (Stanley Parzen, of counsel) for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Third-party plaintiffs, A. Epstein and Sons International, Incorporated (a Delaware corporation headquartered in Illinois), and its wholly owned subsidiaries, A. Epstein & Sons Incorporated and the McKinley Company (both Illinois corporations), appeal from an order of the circuit court of Cook County dismissing for lack of personal jurisdiction a third-party complaint against the nonresident third-party defendant, Approved Roofing and Sheet Metal Company (hereinafter referred to as Approved), an Ohio corporation. The question presented by this appeal is whether the jurisdictional facts alleged establish sufficient contacts between the nonresident defendant and the State of Illinois to justify the courts of Illinois exercising personal jurisdiction.

For reasons hereinafter set forth we affirm the judgment of the circuit court of Cook County.

Third-party plaintiffs contend that Approved transacted business within this State, thereby rendering it amenable to jurisdiction within Illinois pursuant to section 17 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 17) which provides for *in personam* jurisdiction over nonresident defendants. Commonly known as the Illinois "long arm" statute, section 17 states in pertinent part:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State."

It is undisputed that if jurisdiction is to be sustained over the nonresident defendant in the instant case it must be acquired under the Illinois "long arm" statute. It is our conclusion that Approved's alleged contacts with the State of Illinois are not of such a nature and quality to support the exercise of personal jurisdiction.

The pertinent facts, while contradictory as to certain allegations, are as follows:

The Coca-Cola Company and Canners for Coca-Cola Bottlers, Incorporated (hereinafter referred to collectively as Coca-Cola), brought

suit against A. Epstein & Sons International, Incorporated (hereinafter referred to as International), its wholly owned Illinois subsidiaries, A. Epstein & Sons, Incorporated (hereinafter referred to as Sons), and the McKinley Company (hereinafter referred to as McKinley), and the A. Epstein Companies, Incorporated (hereinafter referred to as Companies)[1], for alleged breach of six written contracts relating to the design and construction of the roofs of six facilities located in three States: Ohio, Illinois and New Hampshire. International, Sons, McKinley and Companies answered denying the material allegations and asserting various defenses. Additionally, three of the defendants, International, Companies and McKinley (hereinafter collectively referred to as third-party plaintiffs), filed on May 3, 1978, a third-party complaint against the three subcontractors who had actually installed four of the allegedly defective roofs. Third-party defendant, Crowther Roofing & Sheet Metal, Inc., is an Illinois corporation. Third-party defendant, Reliable Roofing & Sheet Metal Co. Inc., a foreign corporation, does not appeal from the determination of the trial court that it had sufficient contacts with Illinois. Only Approved, the Ohio third-party defendant, is before this court on appeal.

On June 2, 1978, Approved filed a special and limited appearance and a motion to quash service of summons, attacking the jurisdiction of the Illinois courts (Ill. Rev. Stat. 1977, ch. 110, par. 20). Summons had been served in accordance with the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*). In support of its motion to quash service of summons, Approved submitted memoranda of law and an affidavit alleging that it had done no act to submit to the jurisdiction of the Illinois courts. Third-party plaintiffs filed a memorandum and affidavits in opposition to the motion of Approved. After arguments of counsel, the trial court on November 1, 1978, granted Approved's motion. On January 17, 1979, third-party plaintiffs filed a motion to reconsider the order of November 1, 1978, dismissing Approved (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)). After additional memoranda and arguments of counsel, the trial court on March 7, 1979, denied the third-party plaintiffs' motion. On August 16, 1979, the orders of November 1, 1978, and March 6, 1979, were certified by the trial court and this appeal taken.

Approved is a roofing contractor located in Columbus, Ohio. It is a corporation organized and existing under the laws of Ohio. Approved maintains it has never performed services or furnished materials outside Ohio, and its business is limited almost exclusively to construction

---

[1] International, a Delaware corporation headquartered in Illinois, has been the parent company for the two Illinois corporations, Sons and McKinley, since February 1975. From July 1970 to February 1975 both Sons and McKinley were wholly owned subsidiaries of defendant Companies, a Delaware corporation headquartered in Illinois.

projects located within a 75-mile radius of Columbus, Ohio. In 1969 and 1970 Approved was listed in the directory of the National Roofing Contractors Association headquartered in Oak Park, Illinois. This directory lists the names and addresses of its members.

During 1970 Approved subscribed to reporting services listing construction contracts to be put out for bid in Ohio. Approved learned from such a service that bids were to be accepted on a contract for the installation of a roof on a can manufacturing plant and warehouse to be built in Columbus, Ohio. At some time prior to the deadline for bids on the aforementioned project, Approved contacted McKinley's Ohio construction manager, William Swigert, in Columbus, Ohio, for the specifications pertaining to the project. Approved met with Swigert and ultimately submitted its bid on the project to Swigert in Columbus, Ohio. Swigert then forwarded the bid to McKinley in Chicago.

A written contract, entitled "purchase order," addressed to Approved and dated December 10, 1969, was prepared by McKinley in Chicago, Illinois, and sent to Columbus, Ohio. The contract allegedly incorporated the terms of Approved's bid and specified additionally that the terms and conditions of the contract between Coca-Cola and the general contractor, McKinley, would become part of this contract between McKinley and Approved.

The terms of the contract between Coca-Cola and McKinley provide that "[t]he law of the place of the building shall govern the construction of the contract," and that McKinley maintain in Ohio an on-site representative. The contract between McKinley and Approved further provided that Approved furnish Workmen's Compensation and Structural insurance and issue a guarantee to McKinley when its contract was completed. The contract between McKinley and Approved further required that McKinley's Ohio construction manager, Swigert, review, initial and approve any requests for payment submitted by Approved.

During the performance in Ohio of the contract between McKinley and Approved, McKinley issued from Chicago various change orders addressed to Approved to be performed in Ohio. Each of the change orders expressly provided that to expedite payment Approved should have Swigert, the Ohio construction manager, review and initial all payment requests. Invoices requesting payment were addressed to McKinley in Chicago but were submitted by Approved to Swigert in Columbus, Ohio. Swigert then forwarded the invoices to McKinley in Chicago, and McKinley paid for the completed work by sending checks drawn on an Illinois bank to Approved in Ohio. All but two of the invoices in the record on appeal bear the initials "WFS."

The other two documents concerning the performance of the contract which do not bear the initials of Swigert, McKinley's Ohio

construction manager, are the final statement dated September 17, 1970, and stamped received by McKinley on September 23, 1970, and the guarantee dated October 2, 1970, and stamped received by McKinley on December 2, 1970. McKinley contends on appeal that the "final statement" and "guarantee" were mailed directly to McKinley, thereby evidencing direct contact by Approved with the State of Illinois. Further, McKinley asserts that the two invoices which do not bear the initials of Swigert additionally demonstrate direct communication by Approved. In response to these assertions Approved replies that consistent with its practice of submitting all documents to Swigert in Ohio, these documents also were delivered to Swigert, who forwarded them to McKinley in Chicago. The lapse of time between the dates on the documents and the notations of receipt by McKinley are cited by Approved to support its argument that even these documents were not mailed by it directly to McKinley in Illinois.

■■ The Illinois "long arm" statute was intended to assert jurisdiction over nonresident defendants to the extent permitted by due process. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673; *Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 741, 371 N.E.2d 161.) The parties are in agreement that the constitutional standard for determining whether Illinois may rightfully assert jurisdiction over Approved is set forth in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, and its progeny[2]: that a defendant "have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" An essential criterion established by these cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in the forum State. The minimum contacts test of *International Shoe Co.* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. (*Hanson v. Denckla*, at 246.) The physical presence in Illinois of a nonresident defendant, although to be considered, is not the controlling factor in determining jurisdiction. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761; *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 254, 219 N.E.2d 646.) Although a single transaction within the forum State may be sufficient to confer jurisdiction (*Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 969, 304 N.E.2d 27), it

---

[2] *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199; *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569; *Kulko v. Superior Court* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690; and *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.

is essential in each case that there be some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its law. (*International Shoe Co.*; *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 346, 395 N.E.2d 1131.) It has also been held in Illinois that it is not merely contacts which are considered in determining whether it is fair and reasonable that a defendant be amenable to service of process in Illinois but also the nature of the business transaction, the applicability of Illinois law, the contemplation of the parties, and the availability of witnesses. *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 19, 308 N.E.2d 78; *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 852, 387 N.E.2d 1272.

In the case at bar Approved's alleged activity within Illinois appears to be limited to and arises out of a single contract with an Illinois company to construct a roof on a building located in Columbus, Ohio. Approved made no personal visits to Illinois, nor did it place any telephone calls to Illinois concerning the subject matter of this lawsuit. The relationship between Approved and third-party plaintiffs was initiated in Ohio when Approved, in response to McKinley's solicitation of bids, contacted Swigert, McKinley's Ohio construction manager. The actual roof construction by Approved took place entirely in Ohio.

■■ To sustain *in personam* jurisdiction in Illinois, third-party plaintiffs contend that the contract was formed in Illinois when the purchase order from McKinley was placed in the United States mail in Illinois. Such act of mail deposit, while a formality of contract execution, is not determinative for purposes of jurisdiction. (*Lakeside Bridge & Steel Co. v. Mountain State Construction Co.* (7th Cir. 1979), 597 F.2d 596, 604, *cert. denied* (1980), 445 U.S. 907, 63 L. Ed. 2d 325, 100 S. Ct. 1087.) We find it unnecessary, therefore, to judge whether the contract was in fact formed in Illinois; the significant factor is whether Approved engaged in some act or conduct by which it may be said to have invoked the benefits and protections of Illinois law. *International Shoe Co.*; *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761; *Lima v. Disney World, Inc.* (1977), 47 Ill. App. 3d 658, 660, 365 N.E.2d 89.

Third-party plaintiffs further urge that the following acts constitute sufficient minimum contacts to confer Illinois jurisdiction over Approved: (1) that Approved was a member of the National Roofing Contractors Association and listed in its directory; (2) that McKinley was a named insured in the Workmen's Compensation and Structural insurance obtained by Approved; (3) that certain documents were purportedly mailed by Approved to McKinley in Illinois; and (4) that Approved was paid by checks drawn on banks located in Illinois. We do not consider

Approved's membership in the National Roofing Contractors Association or its inclusion in the association's directory to be noteworthy in assessing the existence of "minimum contacts."

Nor do we deem substantial the naming of McKinley as an insured in the Workmen's Compensation and Structural insurance procured by Approved. Insuring McKinley against accidents which may injure Ohio workers and from damage which may occur to Ohio property does not in our opinion demonstrate the invocation by Approved of the benefits and protections of Illinois law.

Third-party plaintiffs contend that Approved submitted directly to McKinley in Illinois certain documents including a "final statement" and "guarantee" and two invoices which do not bear the initials of McKinley's Ohio construction manager Swigert. They argue therefrom that this direct communication with Illinois constitutes "minimum contacts." Approved argues that the time lapse between the dates which appear on some of the documents and the notations of receipt by McKinley in Illinois, together with its established practice of submitting all documents to Swigert in Ohio, supports its position that the documents were in fact delivered to Swigert in Ohio and then forwarded by him to McKinley in Illinois. Even if it were established that the particular documents here involved were in fact mailed by Approved directly to Illinois, the mailing of such documents, considered in the framework of all pertinent facts, would not constitute, in our opinion, activities sufficient to establish "minimum contacts."

Third-party plaintiffs further attempt to establish Approved's contacts with Illinois by calling attention to the fact that Approved was paid with checks drawn on banks located in Illinois. We agree with the court's holding in *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 350, where the court stated:

> "Nor do we agree with plaintiff's contention that the fact that the check which it mailed to defendant had to clear an Illinois bank is a relevant contact, for it pertains only to plaintiff's performance. Defendant's performance with regard to the check occurred in Georgia when defendant accepted it and deposited it there for payment."

Similarly, in the case at bar the unilateral activity of McKinley in preparing and mailing checks drawn upon banks located in Illinois will not subject Approved to the jurisdiction of Illinois courts. The unilateral action of plaintiff cannot serve to satisfy the jurisdictional requirement because only the actions of defendant are relevant. (*Chicago Film Enterprises*, 739, 742; *Rosenthal & Co. v. Dodick* (N.D. Ill. 1973), 365 F. Supp. 847, 850; *Geldermann & Co., Inc. v. Dussault* (N.D. Ill. 1974), 384

F. Supp. 566, 572.) Approved's "performance with regard to the check[s] occurred in [Ohio] when [Approved] accepted [them] and deposited [the checks] there for payment." *Woodfield Ford, Inc.*, at 350.

In summary, we conclude that the arguments of third-party plaintiff hereinabove analyzed do not individually nor collectively achieve the level of "minimum contacts" necessary to subject Approved to the jurisdiction of the Illinois courts.

Further, Approved's conduct and connection with Illinois, as reflected by the record, do not achieve such dimension that Approved "should [have] reasonably anticipate[d] being haled into court there." (*World-Wide Volkswagen, Inc. v. Woodson* (1980), 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567; *Cook Associates, Inc. v. Lexington United Corporation* (1980), 86 Ill. App. 3d 909, 407 N.E.2d 944.) The contract between McKinley and Approved specifically provided that Ohio law was to govern the "construction of the contract." In addition, general contract law principles provide that matters arising from the performance of the contract are to be governed by the law of the place of performance. (*Keco Industries, Inc. v. ACF Industries, Inc.* (4th Cir. 1963), 316 F.2d 513, 514; 11 Williston, Contracts §1292A, at 12 (3d ed. 1968).) Thus it would appear that the parties intended that Ohio law, not that of Illinois, govern the contract between Approved and McKinley.

Third-party plaintiffs contend that "the undisputed facts [of *Cook Associates, Inc. v. Colonial Broach & Machine Co.*] placed Approved in a position identical in all material respects to that of the defendant in *Cook.*" We do not agree. Cook Associates, an employment agency incorporated in Illinois with its principal place of business in Chicago, received a telephone call from defendant originating in Michigan concerning a prospective job applicant. Unlike the case at bar, the appellate court found that "[o]nce defendant informed plaintiff that it was interested in a certain person to fill a position and agreed to pay plaintiff's referral fee if it eventually hired that person, defendant knew, or should have known, that it had entered into a contract with an Illinois agency, that the agency would perform its services from its office in Illinois, that the fee, if due, would be paid to plaintiff in Illinois, and that if the fee were not paid as promised, defendant might be liable to suit in the Illinois courts." (*Cook Associates, Inc.*, 14 Ill. App. 3d 965, 970.) In the instant case as distinguished from *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, Approved could not have reasonably anticipated being haled into court in Illinois. *Cook Associates, Inc. v. Lexington United Corp.*

As we have previously noted, courts must be concerned with assuring that the maintenance of a suit "does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*International*

*Shoe*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) As also noted earlier, the relationship between the defendant and the forum State must be such that it is "reasonable * * * to require the corporation to defend the particular suit which is brought there." (*International Shoe*, 326 U.S. 310, 317, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) In discussing the standard of reasonableness, the United States Supreme Court, in *World-Wide Volkswagen v. Woodson*, stated:

> "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court, supra*, at 92, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court, supra*, at 93, 98." 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564.

Based upon our review of the record, we cannot conclude that if Approved were forced to litigate this matter in the courts of Illinois, it would suffer only minimal or no inconvenience. Nor can we logically conclude, based upon our foregoing discussion, that Illinois has a strong interest in applying its law to the controversy. Moreover, we note that the availability of many of the witnesses, as well as the location of the physical evidence in Ohio, would suggest that differences between third-party plaintiffs and Approved be litigated before the tribunals of that State.

■ Because we find that Approved does not have the requisite "minimum" contacts" with Illinois, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.