SUSAN E. LOGGANS, Plaintiff-Appellant, *v.* JEWISH COMMUNITY CENTER OF MILWAUKEE, Defendant-Appellee.

First District (5th Division)  No. 81—3083

Opinion filed March 25, 1983.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French and Dorothy F. French, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Susan E. Loggans sued defendant Jewish Community Center of Milwaukee for damages for injuries she suffered on July 21, 1978, while horseback riding at Camp Interlochen in Eagle River, Wisconsin. Camp Interlochen is a children's camp owned by defendant. Defendant was served in Milwaukee. It filed a special and limited appearance and motion to quash service for lack of personal jurisdiction. Plaintiff and defendant each filed affidavits in support of their positions on the motion to quash. The trial court ordered discovery for the limited purpose of information concerning defendant's special and limited appearance. After a hearing, defendant's motion was granted.

Plaintiff appeals, contending that: (1) defendant's commercial activities in Illinois were sufficiently substantial to constitute doing business under sections 13.3 and 16 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, pars. 13.3, 16), now codified as sections 2—204 and 2—208 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—204, 2—208); and (2) the injuries sustained by plaintiff were sufficiently related to the business transacted by defendant to

establish jurisdiction under the Illinois long-arm statute, section 17 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 17), now codified as section 2—209 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—209).

Plaintiff, by affidavit, stated:

During her 1969 Christmas vacation from school, she sought a summer job by reading the Chicago Tribune help-wanted ads. There was an ad by the Illinois Department of Labor for a riding instructor at a summer camp. From her home in Chicago she telephoned the Department and was told to come to their offices on La Salle Street, Chicago. She went there and was told that her employer would be defendant. Defendant mailed her information to her home in Chicago. She completed the application and mailed it from Chicago to Milwaukee. She was notified by mail that she had been preliminarily accepted and to come to Milwaukee for a personal interview. After her interview there, she was notified in Chicago that she had been accepted as the riding master at Camp Interlochen, the summer camp at Eagle River, Wisconsin. She was so employed during the summer of 1970. Each of the camp counselors, including plaintiff, were specifically invited to return on any available occasion during the year following their employment. They were told specifically that this return by camp counselors and other employees promoted the friendship and purposes of Judaism which they were attempting to instill in camp personnel.

As a result of this invitation, eight years later in the summer of 1978, she returned to the camp, accompanied by her husband. At that time the camp was closed to campers for the season. She was specifically invited to return the following year while the camp was in full operation. She returned the following year, specifically pursuant to the invitation issued the year before and years prior when she was employed there as a counselor. She considered her invitation at the camp to be her continuing responsibility as a prior employee of the camp and in furtherance of the duties and responsibilities she had undertaken at that time.

In her complaint, plaintiff alleged that on July 21, 1978, while at the camp riding horseback, she was injured when the horse slipped and fell in a wet mud hole, which existed due to the negligence of defendant.

The record shows:

Defendant is a nonprofit corporation, incorporated under the laws of Wisconsin. It owns no property, has no agents or offices and does not transact any business in Illinois. It is a social service agency

whose services are designed to provide productive leisure time activity, strengthen Jewish identification and expression, and promote strengthening of Jewish family life. The services and facilities are open to all religions, all creeds and all races. Its members are all from Milwaukee, Wisconsin, area. They make use of defendant's facilities and services. Defendant receives revenue from its membership and from program fees. There is no source of revenue received from Illinois corporations or organizations. There have been contributions from persons living out of Wisconsin. Defendant's administrative director did not remember any specifically from Illinois residents.

Defendant has no offices in Illinois. It does not contribute to any charitable institutions in Illinois. It does not have any members residing in Illinois. It has not held any event or conducted any events in Illinois.

Defendant operates Camp Interlochen, a children's camp at Eagle River, Wisconsin. It has residential cabins for children and staff, an office, library, recreational hall, athletic fields, riding stables and riding ring, the lake and an infirmary for overweight ill children. There are instructions (in swimming, archery and other kinds of activities), as well as athletic and social and recreational activities. The campers' ages are from 9-16. Membership in defendant is required. There is a fee for a three-week session.

The land at this camp is owned by defendant and supervised by its members. There is seasonal, summer employment at the camp. To recruit those employees, defendant places ads in student newspapers or announcements in Hillel House. Hillel is the Jewish student organization on college campuses, a national network. There is a Hillel House at the University of Illinois.

Defendant regularly sends notices of job openings to Hillel House. It has had people from Illinois interested in working at the camp. The camp director does the interviewing and makes the ultimate decision on hiring. They are personal interviews which are in Milwaukee or in Madison, Wisconsin, where there are a lot of university students. The vast majority hired are university students. If there were sufficient applicants from Illinois, the camp director would go there. She has not gone yet.

Plaintiff came to Milwaukee for an interview at defendant's invitation. The executive directors of defendant did not recall whether defendant paid her travel expenses. Neither defendant nor the camp has an office in Illinois; nor a mailing address; nor a telephone number.

The Jewish Community Center of Milwaukee currently uses the

Hillel Counselor, Anrum Bass, at Northern Illinois University at De Kalb, as a source for staff recruitment for Camp Interlochen. Prior to 1980-81 it did not use this source in lining up applicants for interviews. It has not and does not distribute any recruitment materials except to Mr. Bass. It did not receive any applicants from Illinois for the 1981 season. It has not paid for prospective employees from Illinois to travel to Wisconsin to be interviewed.

Defendant publishes a monthly paper and program brochures which are distributed to its members in Milwaukee and to other Jewish Community Centers throughout the country. The only centers in Illinois to which these documents are mailed are the Jewish Community Centers of Chicago.

Defendant and Chicago Jewish Community Centers are part of a network of Jewish Community Centers throughout the world. No formal relationship exists between defendant and Chicago Jewish Community Centers. The network of Jewish Community Centers throughout the world are affiliated under an organization known as the Jewish Welfare Board.

The Jewish Welfare Board is a national organization involved in consultation, personnel recruitment and training for professional and lay leadership. Defendant has no formal or corporate relationship with the Jewish Welfare Board. It does pay an annual fee to the Jewish Welfare Board. The board does not make donations to defendant, nor does it have any control whatever over the activities of defendant. The Jewish Welfare Board has offices only in New York City, New York, Phoenix, Arizona, and Jerusalem, Israel. It does not have an office in Illinois nor does it have any field representatives in Illinois. Defendant does not place any advertisements or notices in the Jewish Welfare Board national newspaper.

The board has a national newspaper. Defendant has never put advertisements or notices in it. The board does not accept ads from the local centers. It has on infrequent occasions printed an article regarding a program in defendant's center. It is only for an exchange of ideas among centers.

Ninety-five percent of defendant's employees are local residents of Milwaukee who have had contact with defendant, either initially as volunteers who then became employed or who were trained in the local university in physical education and social work. Defendant has two employees from outside Milwaukee, both from New York City. It does not have nor ever has had any people who were originally from Chicago or were from Chicago when they came to Milwaukee to seek employment. To recruit its employees, defendant utilizes the Jewish

Welfare Board, which has a national personnel bureau and lists various job vacancies for centers throughout the country. The other source is Milwaukee newspaper advertising.

If somebody at a center in Chicago obtained a copy of the Personnel Reporter published by the board and which contains job listings for openings in centers throughout the world, defendant would have listed there any jobs it would have open in Milwaukee. If someone from Chicago desired to work for defendant, he or she would be considered based on his or her qualifications.

For certain nonprofessional openings, *i.e.*, support jobs, clerical or maintenance, defendant might use the public job service, such as the Department of Labor for notices. It has never put a notice with the Illinois Department of Labor. It has used the Wisconsin Department of Labor only for maintenance employees. It is not known whether Wisconsin exchanges information with other States.

In 1974, defendant entered into a written contract with the Chicago Jewish Community Centers, which operates Camp Chi at Lake Delton, Wisconsin, for older adults. Under that agreement, defendant paid to the Chicago Centers $50,000 as defendant's share of expanding that camp in order to accommodate 20 Milwaukeeans each year. Defendant paid off its obligation under this contract, which is still in force and will be in perpetuity. There is no agreement between defendant and the Chicago Centers that defendant's Camp Interlochen will take people from Chicago in exchange for sending defendant's people to Camp Chi.

Bus transportation of people from Chicago to Camp Chi was contracted for by the Chicago Center for the benefit of its people. There was no agreement or understanding with any other Illinois center; nor with any temples or synagogues in Illinois.

Plaintiff contends that all the above activities in Illinois were sufficiently substantial under sections 13.3 and 16 of the Civil Practice Act to constitute doing business in Illinois and that her injuries were sufficiently related to the transaction of business by defendant in Illinois to establish jurisdiction under the Illinois long-arm statute (section 17 of the Civil Practice Act). We disagree.

With reference to plaintiff's first contention, jurisdiction may be acquired over a nonresident for a cause of action unrelated to the corporation's activities in this State so long as the corporation is doing business in Illinois. (*Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857.) There is no all-inclusive test for determining whether a foreign corporation is doing business in this State. (*Cook*

*Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) Such finding, however, generally requires that the corporation conducts business in Illinois of such a character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of Illinois. *Cook Associates, Inc. v. Lexington United Corp.*

With reference to plaintiff's second contention, this court said in *Veeninga v. Alt* (1982), 111 Ill. App. 3d 775, 777, 444 N.E.2d 780:

"Our supreme court has stated that our long-arm statute reflects 'a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause.' (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673.) Recently, in *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203, the court clarified this observation by stating: 'A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible.' Accordingly, 'the boundaries or limits under our statute are not to be equated with the "minimum contacts" test under the due process clause.' (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847; see *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, [158].)' [T]his due process standard represents only the outer limits beyond which a State may not go to acquire jurisdiction over nonresidents.' *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197."

Under both contentions, plaintiff relies on the following activities:

(1) Defendant placed a notice with the Illinois Department of Labor. Plaintiff was hired and as an employee was invited to return to the camp at Eagle River, Wisconsin.

(2) Defendant now sends notices of job openings for the camp to Hillel Houses at the University of Illinois and Northern Illinois University.

(3) Defendant contracted with the Jewish Community Centers of Chicago in order to send 20 of its older adult campers to the Chicago community Center's Camp Chi at Lake Delton, Wisconsin.

(4) Defendant sends its monthly newspaper and program brochures to the Jewish Community Centers of Chicago.

■ We hold that none of these, taken singly or in combination, constitutes either "doing business" or the "transaction of business."

See *Colnar v. Baldknobbers, Inc.* (1982), 107 Ill. App. 3d 234, 437 N.E.2d 718.

Taking as true plaintiff's assertion that she read an ad in the Chicago Tribune which had been placed by the Illinois Department of Labor (even though the depositions plaintiff took of defendant's officers showed defendant had never placed an ad with the Illinois Department of Labor), that ad, in and of itself, is an insufficient basis for Illinois personal jurisdiction. Nor do the use of Hillel Houses and the sending of defendant's monthly paper and program brochures to the Chicago Centers aid plaintiff's claim of jurisdiction. More than mere solicitation generally is required. (*St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52.) Nor does the agreement between defendant and the Chicago Community Centers concerning the use by 20 adult campers at Camp Chi at Lake Delton add anything of substance to plaintiff's claim of jurisdiction. These activities are not sufficiently substantial to constitute the doing of business in Illinois. See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, where the court held that an exhibit at three trade shows where some orders were taken and a fruitless interview did not constitute doing business.

Even though the "transaction of any business" in section 17 is not to be restricted to "doing business" (*Lurie v. Rupe* (1964), 51 Ill. App. 2d 164, 201 N.E.2d 158, *appeal denied* (1964), 30 Ill. 2d 627, *cert denied* (1965), 380 U.S. 964, 14 L. Ed. 2d 154, 85 S. Ct. 1108; *Haas v. Fancher Furniture Co.* (N.D. Ill. 1957), 156 F. Supp. 564), the above activities do not satisfy the requirements of section 17.

In *Stephens v. Northern Indiana Public Service Co.* (1980), 87 Ill. App. 3d 961, 967, 409 N.E.2d 423, the court said:

"The purpose of the phrase 'arising from' in section 17(1) (and of section 17(3)) is to assure that there is a sufficiently close relationship between the nonresident defendant's business activities here and the cause of action against which he must defend. (*Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 624, 374 N.E.2d 954, 957; *First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 434, 352 N.E.2d 285, 291; *Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 252-53, 219 N.E.2d 646, 651.) As the court said in *Whittington*:

'*** [S]ection 17(1)(a) of the long arm statute does not confer jurisdiction over a foreign corporation doing business in Illinois in an action bearing no relationship to the business done in Illinois. [Citation.] Simply stated, doing business in

Illinois, *by itself*, is not a sufficient contact with Illinois to trigger long arm jurisdiction under section 17(1)(a). The foreign corporation's business within Illinois must be related to the cause of action in question before section 17(1)(a) will confer personal jurisdiction. If none of this business gives rise, at least in part, to the cause of action in question, then no such jurisdiction exists.' 58 Ill. App. 3d 621, 624-25, 374 N.E.2d 954, 957.

In *Chicago Film Enterprises v. Jablanow*, the court again expressed the rule as stated in *Chicago Silver Exchange v. United Refinery, Inc.* (N.D. Ill. 1975), 394 F. Supp. 1332, 1335, that ' "section 17 [of the Illinois long-arm statute] clearly requires that the activities which are relied on to sustain jurisdiction must give rise to the suit in question, at least in part ***." ' 55 Ill. App. 3d 739, 742, 371 N.E.2d 161."

■ Further, section 17 requires that a plaintiff's claim be one which lies in the wake of the commercial activities by which defendant submitted to the jurisdiction of Illinois courts. (*Koplin v. Thomas, Haab & Botts* (1966), 73 Ill. App. 2d 242, 219 N.E.2d 646, *appeal denied* (1967), 35 Ill. 2d 629; *Dalton v. Blanford* (1978), 67 Ill. App. 3d 91, 383 N.E.2d 806.) The injury to plaintiff in 1978, eight years after she had been hired and had worked for one summer in 1970, cannot be said to "lie in the wake" of the activities on which plaintiff relies. Nor do the activities relied on give rise, even in part, to the suit in question.

Even if defendant's activities could be considered "doing business" or the "transaction" of business in Illinois, there is no factual relationship and there is a complete lack of proximity in time between those activities and plaintiff's injury eight years later.

The trial court correctly granted defendant's motion to quash service. It is affirmed.

Affirmed.

WILSON, P.J., and MEJDA, J., concur.