### 69139. A.A.A., INC. et al. v. LINDBERG.
#### (324 SE2d 480)

DEEN, Presiding Judge.

The appellant, A.A.A., Inc., is a Georgia corporation in the business of selling wrecked, exotic cars. The appellant, Wayne Gay, is the president of A.A.A., Inc. In January 1980 the appellee, Scott Lindberg, an Illinois resident, observed an advertisement placed in *Car & Driver* magazine by the appellants, concerning rebuildable wrecks for sale, and Lindberg actually travelled to A.A.A.'s place of business in Ellenwood, Georgia, in order to inspect a wrecked 1980 Mercedes. This particular vehicle, however, was sold to another customer before the appellee could strike a bargain with the appellants.

On April 15, 1980, Gay telephoned Lindberg to inform him of the availability of another 1980 Mercedes. It was disputed whether Lindberg had requested such a contact during his earlier negotiations with Gay, or whether Gay had telephoned on his own initiative. Gay forwarded three photos of the wrecked vehicle to Lindberg, at the latter's request, and on April 20, 1980, Lindberg again travelled to Ellenwood, Georgia, to inspect the car and to pay a $2,000 deposit towards the total purchase price of $21,250. During that visit, Gay gave Lindberg a signed document which delineated the particulars of the sale. (Lindberg denies signing the instrument himself until months later.) Lindberg subsequently had his Illinois banker forward the balance of the purchase price by April 23, 1980, as required by the agreement, and Gay shipped the vehicle to a repair shop in Munster, Indiana, as designated by Lindberg. Gay shortly thereafter mailed the appellee

the certificate of title for the vehicle.

The record shows that the appellants placed advertisements in several national publications, including the *New York Times, Car & Driver, Auto Week, Road & Track, Atlanta Constitution,* and the *Chicago Tribune.* In addition to the appellee, the appellants had made six other sales to Illinois residents who had responded to advertisements.

After discovering that the costs for repairing the 1980 Mercedes were much greater than anticipated, the appellee filed suit in the Circuit Court of Cook County, Illinois, alleging breach of contract and fraud. The appellants were served pursuant to the Illinois Long Arm Statute but made no appearance in the matter. On October 14, 1982, a default judgment for $44,415 was awarded against the appellants. On March 14, 1983, the appellee commenced this action in the State Court of Clayton County, Georgia, to domesticate the Illinois judgment. The appellants defended on the basis that the Illinois judgment was void for lack of personal jurisdiction, but the trial court denied their motion for summary judgment and instead granted summary judgment for the appellee. *Held*:

Under the full faith and credit clause of the United States Constitution, the judgment of a foreign court will be enforced by the courts of this state, unless the foreign judgment is successfully, collaterally attacked for lack of jurisdiction. *Intl. Systems v. Bladen County,* 168 Ga. App. 316 (308 SE2d 679) (1983). Where the foreign law is pleaded and proved in the action to domesticate the judgment, as in this case, Georgia courts generally will apply that foreign law. See *Davis Mud & Chemical v. Pilgrim,* 165 Ga. App. 738 (302 SE2d 423) (1983); *Masters v. ESR Corp.,* 150 Ga. App. 658 (1) (258 SE2d 224) (1979).

The Illinois Long Arm Statute provides that "[a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State to any cause of action arising from the doing of any of such acts: (a) The transaction of any business within this State; (b) The commission of a tortious act within this State . . ." The Illinois courts have previously considered this statute to reflect a deliberate assertion of personal jurisdiction over nonresident defendants to the extent allowed by due process. Woodfield Ford v. Akins Ford Corp., 77 Ill. App.3d 343 (395 NE2d 1131) (1979); Nelson v. Miller, 11 Ill.2d 378 (143 NE2d 673) (1957).

Due process requires that a nonresident defendant have minimum contacts with the forum state such that the suit does not offend traditional notions of fair play and substantial justice. Intl. Shoe Co. v. State of Wash., 326 U. S. 310 (66 SC 154, 90 LE 95) (1945). It is

also essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U. S. 235, 253 (78 SC 1228, 2 LE2d 1283) (1958). A qualitative, rather than a mechanical or quantitative, evaluation of a nonresident's connection with a forum state is to be employed. Morton v. Environmental Land·Systems, 55 Ill. App.3d 369 (370 NE2d 1106) (1977); Woodfield Ford v. Akins Ford Corp., supra. More recently, however, the Illinois courts have imposed a higher threshold for asserting personal jurisdiction than the minimum contacts test. See Green v. Advance Ross Electronics Corp., 86 Ill.2d 431 (427 NE2d 1203) (1981); Cook Assoc. v. Lexington United Corp., 87 Ill.2d 190 (429 NE2d 847) (1981).

Considering all the circumstances of the dealing between the appellants and the appellee and of the appellants' relationship with the state of Illinois, we conclude that the Illinois courts did not have personal jurisdiction over the appellants. The appellants' advertisement placed in the *Car & Driver* magazine (as well as the *Chicago Tribune*) certainly did not constitute a transaction of business in Illinois, or an offer to transact business in Illinois; rather, the ads invited interested persons to inquire with the appellants at their place of business in Ellenwood, Georgia. See Koplin v. Saul Lerner Co., 52 Ill. App.2d 97 (201 NE2d 763) (1964). Further, the appellant Gay's telephone contact with the appellee on April 15, 1980, obviously inspired by the appellee's recent interest in purchasing a rebuildable Mercedes wreck, did not sufficiently connect the appellants with Illinois so as to confer on that state's courts jurisdiction over the appellants. Caicos Petroleum Service Corp. v. Hunsaker, 551 FSupp. 152 (D.C. Ill. 1982).

Notwithstanding the appellee's contention that the contractual terms for the purchase of the wrecked Mercedes were agreed upon during the telephone conversation on April 15, 1980, no enforceable contract was entered until the appellee appeared at the appellants' place of business in Georgia. Compare Cook Assoc. v. Colonial Broach & Machine Co., 14 Ill. App.3d 965 (304 NE2d 27) (1973) (where single telephonic contact, *during which enforceable contract was entered,* supplied sufficient minimum contacts). Virtually all of the appellants' performance under the contract occurred in Georgia, except for the delivery of the vehicle to a repair shop in Indiana and the subsequent mailing of the certificate of title to the appellee. Obviously, delivery of the car to Indiana provided no connection between the appellants and Illinois, and the mailing of documents of title was of only secondary importance to the appellee's actual possession of the vehicle which occurred in Indiana. Woodfield Ford v. Akins Ford Corp., supra. Lastly, the appellee's wiring his payment for the vehicle from an Illinois bank is an irrelevant contact, since it pertains only to the

appellee's performance. Coca-Cola Co. v. A. Epstein & Sons Intl., 89 Ill. App.3d 253 (411 NE2d 917) (1980).

In summary, we find nothing to indicate that the appellants purposefully availed themselves of the privilege of conducting activities in Illinois so as to invoke the benefits and protections of that state's laws. Considering the product offered by the appellants and the usual need of a prospective customer to inspect a wrecked vehicle before purchasing it, the appellants' obvious mode of operation was the most practical one, i.e., that of inviting interested persons to do business at the appellants' place of business. Given the circumstances of the instant case and the present body of case law, we are convinced that finding personal jurisdiction over the appellants in the Illinois courts would not be consistent with traditional notions of fair play and substantial justice under a due process analysis, and thus would be inconsistent with the somewhat stricter standard now followed by the Illinois courts.

The appellee's assertion of fraud as a theory of relief avails him nothing. Any misrepresentation by the appellant Gay as to the cost of repairing the car in question became actionable in Georgia at the time of the finalization of the contract. The appellee may not have discovered the extent of his damage until the vehicle was delivered to the repair shop in Indiana, but if any misrepresentation occurred at contract formation, the damage (economic loss) also occurred at that time. Cf. Unarco Indus. v. Frederick Mfg., 109 Ill. App.3d 189 (440 NE2d 360) (1982); Green v. Advance Ross Electronics Corp., supra.

*Judgment reversed. McMurray, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 16, 1984 —
REHEARING DENIED NOVEMBER 27, 1984.

*T. Henry Clarke IV, William W. Waite*, for appellants.
*Carl V. Kirsch*, for appellee.