A93A0797. KAYLOR et al. v. TURNER et al.
(435 SE2d 233)

POPE, Chief Judge.

This action was brought pursuant to the Uniform Enforcement of Foreign Judgments Act. The parties submitted this case for the trial court's consideration on stipulated facts. The parties stipulated that in the spring of 1980 Russell S. Kaylor and Derris Turner formed Kaylor Machinery & Supply, Inc. ("KM&S") and Kaylor, Inc., both Tennessee corporations. In 1980 and 1981 Blount National Bank extended certain loans to those corporations. Russell Kaylor, Kathy Kaylor, Ben Turner, Derris Turner and W. T. Phillips executed guaranty agreements to secure those loans. Those loans went into default and the bank demanded payment in full by June 15, 1981 of those loans.

The bank filed an action in the Chancery Court of Blount County, Tennessee, against Russell Kaylor and Kathy Kaylor on their guaranties for one-third of the outstanding balances owed by KM&S and Kaylor, Inc. The bank filed that suit on the condition that the suit would not prejudice or limit the bank's right to recover the full amount from the other guarantors. A bench trial was conducted in that case and on September 12, 1983, the court issued a final judgment and decree in favor of the bank joint and severally against both Kaylors in the sum of $80,106.31 and additionally a judgment against Russell Kaylor individually in the sum of $35,905.92. No appeal was taken from that judgment.

In 1984, Ben Turner and Derris Turner paid all monies owing to the bank on the loans extended to KM&S and Kaylor, Inc. The Kaylors made no payments to the bank. Prior to November 1984, the bank offered to assign its judgment against the Kaylors to the Turners. An assignment was not made at that time.

In 1990, the Turners, as assignees of First American Bank of Knoxville, Tennessee, the successor-in-interest to Blount National Bank,[1] filed a revival action in the Chancery Court of Blount County, Tennessee, to revive the bank's 1983 judgment against the Kaylors. In that action, Kathy Kaylor was served by certified mail and Russell Kaylor was personally served in accordance with Tennessee law. The Kaylors did not respond in that action. That court issued an order reviving the judgment and no appeal was taken from that order.

On December 10, 1990, the Turners filed an action to domesticate the Tennessee judgment in Georgia, where the Kaylors have resided since 1983. In the trial court, the Kaylors did not challenge the Turners' right to domesticate the judgment, but set forth defenses to the enforcement of that judgment.

1. Under the full faith and credit clause of the United States Constitution, the judgment of a foreign court will be enforced by the courts of this state unless the foreign judgment is successfully attacked for lack of jurisdiction. *A. A. A., Inc. v. Lindberg*, 172 Ga. App. 753 (324 SE2d 480) (1984). Although the Kaylors concede that the trial court had jurisdiction over them in the original litigation, they argue the Chancery Court of Blount County, Tennessee, lacked personal jurisdiction over them in the revival action filed in that court. They contend because they moved to Georgia in 1983 and did not have contacts with the State of Tennessee for several years before the revival action was filed, the Tennessee court does not have jurisdiction over their person because the minimum contacts requirement is not met.

The parties do not cite, and our review of the record did not reveal, any Tennessee law on this point and we will therefore apply Georgia law. See *Ferster v. Ferster*, 220 Ga. 319, 322 (138 SE2d 674) (1964). We note, however, that Tenn. Code Ann. § 20-2-214, providing for jurisdiction of persons unavailable to personal service in Tennessee, confers jurisdiction to the full extent allowed under the due process clause of the Fourteenth Amendment. *Shelby Mut. Ins. Co. v. Moore*, 645 SW2d 242 (Tenn. Ct. App. 1981). The same is true for Georgia's Long Arm Statute, OCGA § 9-10-91. *Clarkson Power Flow v. Thompson*, 244 Ga. 300 (260 SE2d 9) (1979). Therefore in both states, "[t]he interpretations of the United States Supreme Court are controlling, and those of the federal courts entitled to persuasive consideration." *Process Systems v. Dixie Packaging Co.*, 137 Ga. App. 452 (2) (224 SE2d 103) (1976).

In *Huff v. Pharr*, 748 F2d 1553 (11th Cir. 1984), the Eleventh

---

[1] While this is not a fact stipulated by the parties, on January 23, 1990, the First American Bank of Knoxville, Tennessee assigned to the Turners its interests in the judgment obtained in 1983 against the Kaylors.

Circuit Court of Appeals had occasion to consider a similar argument. The issue presented in that appeal was whether a defendant's participation in the original litigation and his connection with the forum state prior to the litigation satisfied the minimum contacts requirement for a second action in the same forum to revive the judgment rendered in the original litigation. The Eleventh Circuit held that the minimum contacts requirement was satisfied in the revival action because that action was "uniquely connected with the defendant's previous forum-related activities." Id. at 1555. See also *Kronstadt v. Kronstadt*, 570 A2d 485, 487 (N.J. Super. 1990) (following the *Huff* decision). We hold that when a defendant had the requisite minimum contacts with the forum state for that state to exercise personal jurisdiction over the defendant during the original litigation, those same contacts are sufficient to provide personal jurisdiction to the trial court for any revival action concerning the judgment entered in the course of the original litigation. Accordingly, the trial court correctly held the Chancery Court of Blount County, Tennessee, had personal jurisdiction over the Kaylors.

2. We next consider whether Georgia or Tennessee law governs this dispute. In 1986, Georgia adopted the Uniform Enforcement of Foreign Judgments Law. OCGA § 9-12-130 et seq. The purpose of that act is to give to holders of foreign judgments the same rights and remedies as the holder of a domestic judgment. The trial court properly looked to OCGA § 9-12-132 to decide which state's substantive law should govern disputes concerning a foreign judgment. That statute provides in pertinent part: "A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed and may be enforced or satisfied in like manner." As the trial court correctly noted, "[t]his [C]ode section creates a conflict of laws rule applicable to foreign judgments so that the trial court must within the language of the act apply Georgia law as if the foreign judgment had been rendered by the forum court. This statutory conflict of laws rule controls rather than the traditional conflict of laws rule of lex loci contractus applied in Georgia."

However, the trial court found that notwithstanding OCGA § 9-12-132, it must apply the traditional conflicts of laws rule applied in Georgia because at the time the judgment was rendered Georgia had not adopted the Uniform Enforcement of Foreign Judgments Law.[2] "Laws which act upon remedies alone, although retroactive, will be enforced, provided they do not impair the obligation of contracts or

---

[2] Tennessee adopted the Uniform Enforcement of Foreign Judgments Law in 1976.

disturb absolutely vested rights, and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations. [Cit.]" *Canton Textile Mills v. Lathem*, 253 Ga. 102, 104 (317 SE2d 189), cert. denied, 469 U. S. 918 (105 SC 296, 83 LE2d 231) (1984). OCGA § 9-12-132 is a law that acts upon remedies alone. Accordingly the trial court erred by failing to apply OCGA § 9-12-132.

3. We next consider whether the trial court properly held that the defendants waived any defenses they may have to enforcement of the judgment because they failed to appear and assert those defenses in the revival action. The general rule concerning what defenses can be asserted in a revival action is that post-judgment defenses may be raised but not defenses available before judgment was entered. See generally 49 CJS, § 540; *Bowers v. Jim Rainwater Builder &c.*, 203 Ga. App. 254, 255 (416 SE2d 832) (1992). While the parties do not cite, and we are not aware of any Georgia case addressing the issue of what defenses are waived by the bar of res judicata when they are not asserted during a revival action, it is well-settled in Georgia that the principle of res judicata applies equally to revival actions as to other suits. Id.; *Heslen v. Heslen*, 199 Ga. App. 271 (1) (404 SE2d 592) (1991); *Mitchell v. Chastain Finance Co.*, 141 Ga. App. 512 (3) (233 SE2d 829) (1977). Tennessee law mirrors Georgia law in this respect. See *Craddock v. Calcutt*, 285 SW2d 528 (Tenn. App. 1955). The three prerequisites necessary for the successful assertion of the defense of res judicata are present in this case: (1) identity of parties; (2) identity of the cause of action; and (3) prior adjudication by a court of competent jurisdiction. See *Ellis v. Curtis-Toledo, Inc.*, 204 Ga. App. 704 (1) (420 SE2d 756) (1992). Because the post-judgment defenses the Kaylors sought to assert against the Turners' attempt to enforce the revived judgment could have been raised in the Tennessee revival action, the trial court correctly held the Kaylors are barred by the doctrine of res judicata from asserting those defenses now.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 14, 1993 —
RECONSIDERATION DENIED JULY 30, 1993

*Varner, Stephens, Wingfield & Humphries, J. Timothy White, Brendan J. McCarthy, Hurt, Richardson, Garner, Todd & Cadenhead, Lisa S. Street, Lamberth, Bonapfel, Cifelli, Willson & Stokes, Gary D. Stokes*, for appellants.
*Schwall, Ruff & Goodman, Emory A. Schwall*, for appellees.