CHEMICAL WASTE MANAGEMENT,
INC., a Delaware Corporation,
Plaintiff,

v.

James R. SIMS; James T. McVey; Adam J. Liff; Jan Liff; Judy Liff, custodian for Zachary Liff; Judy Liff, custodian for Terence Liff; Darren Liff; Daniel Liff; James C. Bow; Abe Freeman; Elizabeth Baisley; Gary Baisley; Kim Baisley–Wyatt; and Mike Schweitzer, Defendants.

No. 94 C 1964.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 12, 1994.

Kenneth J. Gumbiner, Randall W. Reavis, Patton, Boggs & Blow, Greensboro, NC, James T. Hynes, Law Office of James T. Hynes, Chicago, IL, for plaintiff.

James A. Cherney, Andrew E. Skopp, Latham & Watkins, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Before this Court is defendants' motion to dismiss this action for lack of jurisdiction and improper venue pursuant to FED.R.CIV.P. 12(b), or, in the alternative, to transfer the action to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, this Court denies defendants' motion.

#### *Facts*

In deciding a motion to dismiss for lack of personal jurisdiction, a court must accept all undenied factual allegations and resolve all factual disputes in favor of the plaintiff. *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1245 (7th Cir.

1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991) (citing *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984)).

Diversified Scientific Services, Inc. ("DSSI") is a Tennessee corporation engaged in the business of processing mixed liquid wastes and providing on-site environmental remediation services at its plant in Kingston, Tennessee. Chemical Waste Management ("CWM") is a Delaware corporation with its headquarters and principal place of business in Oak Brook, Illinois. Chem–Nuclear Environmental Services ("CNES") and Chem–Nuclear Systems, Inc. ("CNSI") are CWM subsidiaries incorporated in Delaware with their principal place of business in Columbia, South Carolina.

Prior to February, 1991, CNSI officials had considered DSSI as a possible acquisition candidate and had discussed the possibility of acquisition with DSSI's management. In February, 1991, a CNSI employee informed CWM that it should consider the acquisition of DSSI on behalf of CWM or one of its subsidiaries. On May 13, 1991, Michael Lang ("Mr. Lang"), a CWM Vice President, visited the DSSI facility and informed two DSSI shareholders, James Sims and James McVey, that he was visiting DSSI on behalf of CWM and its subsidiaries about a possible acquisition. Mr. Lang reported back to CWM management that further investigation of DSSI was warranted, and recommended that CWM issue a letter of intent to seriously consider the acquisition of DSSI. On May 23, 1991, CWM issued a letter of intent to the DSSI shareholders. Between May and August, 1991, employees from CWM and CNES visited DSSI to inspect its facility in Kingston, Tennessee.

During July and August 1991, CWM's attorney, Jeffrey Everett ("Mr. Everett") exchanged several drafts of a proposed Stock Purchase Agreement ("SPA") with DSSI's attorney, Allen Lentz ("Mr. Lentz"). However, despite the fact that the SPA had passed through several drafts, there was no final agreement as to several important terms of the agreement, including price, warranties, representations and indemnities. On September 4, 1991, Adam Liff ("Mr. Liff"), one of the DSSI shareholders, and Mr. Lentz met with Mr. Lang and Mr. Everett at CWM's corporate offices in Oak Brook, Illinois to negotiate the unresolved terms of the SPA. At that meeting, the parties agreed upon a final purchase price and finalized the representations, warranties, and indemnities.

On September 6, 1991, Mr. Everett sent Mr. Lentz and Mr. Liff a revised draft of the SPA which incorporated the items agreed upon two days earlier at the Oak Brook meeting. The final SPA, dated September 19, 1991, was prepared by Mr. Everett and signed by Bruce Tobecksen, CWM's Chief Financial Officer, in Oak Brook, and was subsequently forwarded to Mr. Lentz in Nashville for signature of the various stockholders. Under the terms of the SPA, CWM purchased one hundred percent of the issued and outstanding shares of capital stock in DSSI. On November 1, 1991, Mr. Lang and Mr. Everett visited the law offices of Mr. Lentz in Nashville for the purpose of delivering closing documents.

Since the closing, CWM has owned and managed DSSI. During this period, CWM has allegedly spent over ten million dollars to bring the DSSI facility into compliance with applicable regulations and to pay fines for non-compliance. On March 29, 1994, CWM brought this action for damages and declaratory relief against the former shareholders of DSSI, alleging that the defendants breached the express contractual warranties contained in the SPA. On May 18, 1994, defendants brought this motion to dismiss for lack of personal jurisdiction and improper venue pursuant to FED.R.CIV.P. 12(b), or, in the alternative, for a transfer of venue to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). On November 3, 1994, the case was reassigned to this Court.

### Analysis

For purposes of this motion, the Court accepts plaintiff's argument that Mr. Liff acted as an agent of defendant shareholders in negotiating CWM's acquisition of DSSI. This finding is buttressed by the affidavits of defendants Elizabeth and Gary Baisley, James C. Bow, and others, all of which assert

that "[t]his transaction was principally negotiated by Adam J. Liff, who acted on behalf of the shareholders as Sellers' Representative." Affidavit of Elizabeth Baisley, p. 1, ¶ 3; Affidavit of Gary Baisley, p. 1, ¶ 3; Affidavit of James C. Bow, p. 1, ¶ 3. Although defendants' reply brief insists that Mr. Liff's role was limited to that of a "lead negotiator," the conflict must be resolved in plaintiff's favor for purposes of this motion. *See Vena v. Western General Agency, Inc.*, 543 F.Supp. 779, 783 (N.D.Ill.1982). As such, defendants are subject to the personal jurisdiction of this Court to the extent that this Court may properly exercise jurisdiction over Mr. Liff. *See Vena v. Western General Agency, Inc., supra,* 543 F.Supp. at 783–84; *Scovill Manufacturing Co. v. Dateline Electric Co.,* 461 F.2d 897, 900 (7th Cir.1972); *Petty v. Cadwallader,* 135 Ill.App.3d 695, 90 Ill.Dec. 518, 482 N.E.2d 225 (4th Dist.1985).

### I. Jurisdiction

■ Jurisdiction in this case is based on diversity of citizenship. In a diversity action, a federal district court in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois state court would have personal jurisdiction. *Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir.1994) (citing *Dehmlow v. Austin Fireworks,* 963 F.2d 941 (7th Cir.1992)). On a 12(b)(2) motion to dismiss, the burden of proving personal jurisdiction rests with the party asserting jurisdiction, the plaintiff in this case. *Publications International, Ltd. v. Simon & Schuster, Inc.,* 763 F.Supp. 309, 310 (N.D.Ill.1991); *Wysnoski v. Millet,* 759 F.Supp. 439, 442 (N.D.Ill.1991) (citing *Saylor v. Dyniewski, supra,* 836 F.2d at 342).

### A. Illinois Long–Arm Statute

■ Prior to September, 1989, a nonresident defendant could be sued in Illinois only if he or she (1) performed one of the acts enumerated in the Illinois long-arm statute; and (2) established minimum contacts with Illinois which satisfy due process require-

ments. *Mors v. Williams,* 791 F.Supp. 739, 741 (N.D.Ill.1992) (citing *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990)). Effective September 7, 1989, however, Illinois amended its long-arm statute to include a new "catch-all" provision, which provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). This "catch-all" provision renders the first inquiry (*i.e.,* did the defendant perform one of the enumerated acts under the long-arm statute) unnecessary because jurisdiction under the Illinois long-arm statute is now co-extensive with the limits of due process. *Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 945; *FMC Corp. v. Varonos, supra,* 892 F.2d at 1311 n. 5; *Mors v. Williams, supra,* 791 F.Supp. at 741; *Damian Services Corp. v. PLC Services, Inc.,* 763 F.Supp. 369, 371 (N.D.Ill.1991) (citations omitted). Accordingly, this Court must ascertain whether the exercise of jurisdiction over these defendants satisfies the requirements of due process. This determination requires an analysis under both the United States and Illinois Constitutions. *Mors v. Williams, supra,* 791 F.Supp. at 741 (citing *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990)); *Damian Services Corp. v. PLC Services, Inc., supra,* 763 F.Supp. at 371 (citation omitted).[1]

### B. Federal Due Process

■ Under the Due Process Clause of the Fourteenth Amendment, a state court may exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *Michael J. Neuman & Associates, Ltd. v. Florabelle*

---

1. The Supreme Court of Illinois has stated that the Illinois Constitution, which contains its own separate and independent guarantee of due process, must be satisfied in addition to the due process guarantee of the U.S. Constitution in order to subject a nonresident defendant to jurisdiction in Illinois. *Rollins v. Ellwood, supra,* 565 N.E.2d at 1316.

*Flowers, Inc., supra,* 15 F.3d at 725. In determining the reasonableness of forcing a nonresident defendant to defend in the forum state, the critical inquiry is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 946 (citations omitted).

■ The actions of Mr. Liff in Oak Brook, Illinois on September 4, 1991 comfortably reach this "minimum contacts" threshold. Travel to Illinois to transact business has long been considered an activity that "invokes the benefits and protections" of Illinois law. *Torco Oil Co. v. Innovative Thermal Corp.,* 730 F.Supp. 126, 134 (N.D.Ill.1989) (citing *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir.1984); *Deluxe Ice Cream v. R.C.H. Tool Corp., supra,* 726 F.2d at 1213). Moreover, even one visit to the state is sufficient to establish the minimum contacts necessary to support personal jurisdiction, if the cause of action arose out of the defendant's conduct on that visit. *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.,* 558 F.Supp. 932, 934–35 (N.D.Ill. 1982) (citations omitted). In the present case, the meeting between Mr. Liff and Mr. Lang at CWM's corporate offices in Illinois resulted in agreement on the critical terms of the SPA, including the final purchase price, representations, warranties, and indemnities. In fact, this meeting was perhaps the most important event leading to the consummation of the Stock Purchase Agreement. Since this lawsuit arises from the alleged breach of representations and warranties agreed upon during the September 4, 1991 meeting, the exercise of jurisdiction over these defendants is reasonable as a matter of federal due process.

■ This conclusion does not end the analysis. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington, supra,* 326 U.S. at 320, 66 S.Ct. at 160). Several factors inform the fairness of a state court's exercise of jurisdiction over a nonresident defendant, including "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief, ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, supra,* 480 U.S. at 113, 107 S.Ct. at 1032 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

Both CWM and the State of Illinois have significant interests in adjudicating the case in Illinois in light of the fact that the very warranties, representations, and indemnities at issue in this case were negotiated and finalized at the September 4, 1991 Oak Brook meeting. Certainly, the State of Illinois has a substantial interest in enforcing contracts involving Illinois citizens negotiated in this state. Likewise, Illinois citizens have a substantial interest in seeking such redress in the courts of Illinois. Moreover, the adjudication of this case in Illinois would not be unduly burdensome for the defendants as a matter of due process. Unlike *Asahi,* long-arm jurisdiction in this case does not extend beyond national boundaries and these defendants need not present their defense in the judicial system of a foreign nation. *See, e.g., Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 945. Moreover, since it was not unduly burdensome for Mr. Liff to come to Illinois to negotiate the SPA, it is fair to require him and his principals to return now. *See Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 400 (N.D.Ill.1982). Accordingly, the facts establish adequate minimum contacts such that the exercise of personal jurisdiction

over these defendants in Illinois is consistent with traditional notions of fair play and substantial justice.

### C. *State Due Process*

Under the Due Process Clause of the Illinois Constitution, jurisdiction over a defendant may be exercised by a state court "only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood, supra,* 565 N.E.2d at 1316 (citing *People ex rel. Mangold v. Flieger,* 106 Ill.2d 546, 88 Ill.Dec. 640, 642, 478 N.E.2d 1366, 1368 (1985)); *Mattison Machine Works v. Tupperware of Australia,* No. 93 C 20115, 1994 WL 174170, at *5 (N.D.Ill. May 6, 1994). In construing the Illinois Constitution's guarantee of due process, a court may look for guidance to constructions of the federal due process clause by federal courts. *Rollins v. Ellwood, supra,* 565 N.E.2d at 1316. For the same reasons articulated in connection with the due process analysis under the U.S. Constitution, this Court finds that the acts of defendants in Illinois are sufficiently substantial to satisfy the due process requirements of the Illinois Constitution.

### II. *Venue*

Defendants also move to dismiss the complaint for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Jurisdiction in this civil action is based on diversity of citizenship alone. Accordingly, plaintiff and defendants agree that the applicable provision for determining venue in this case is 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) provides that, in diversity actions, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2).

As previously discussed, the September 4, 1991 meeting between Mr. Liff and Mr. Lang in Oak Brook, Illinois was the site of significant negotiations and final resolution of the critical terms of the SPA. Since the present action arises from the alleged breach of representations and warranties negotiated, finalized, and memorialized in Illinois, venue is proper in the Northern District of Illinois notwithstanding the possibility that defendants' activities may have been more substantial elsewhere. *See, e.g., Ampac Group Inc. v. Republic of Honduras,* 797 F.Supp. 973, 979 (S.D.Fla.1992); *Translinear, Inc. v. Republic of Haiti,* 538 F.Supp. 141, 144–45 (D.D.C.1982). "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Merchants National Bank v. Safrabank (California),* 776 F.Supp. 538, 541 (D.Kan.1991) (quoting Siegel, Commentary on 1990 Revision of Subdivisions (a), (b) and (e), 28 U.S.C.A. § 1391 (1991)); *see also Fireman's Fund Insurance Companies v. Siemens Energy & Automation, Inc.,* No. 93 CIV. 4669, 1994 WL 376011, at *3 (S.D.N.Y. July 18, 1994).

### III. *Transfer*

In the alternative, defendants move to transfer venue to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Transfer is appropriate under Section 1404(a) where the moving party demonstrates that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Limited Partnership,* 807 F.Supp. 470, 474 (N.D.Ill. 1992) (citations omitted). Because the task of weighing factors for and against transfer "necessarily involves a large degree of subtlety and latitude," the decision to transfer is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986) (citations omitted); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989) (citations omitted).

The first two elements have been met in this case. First, as explained above, the court finds that venue is proper in this forum. Second, defendants assert, and plaintiffs do not contest, that jurisdiction and venue are proper in the Middle District of Tennessee. Indeed, the Middle District of Tennessee may properly exercise subject matter jurisdiction over this lawsuit based on diversity of citizenship, as well as personal jurisdiction over these defendant shareholders of a Tennessee corporation. It appears that venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(a)(2) since the closing took place, and the promissory note is payable, in Nashville. *See Ampac Group Inc. v. Republic of Honduras, supra,* 797 F.Supp. at 979. Hence, this Court's inquiry must focus on the third element, *i.e.,* whether a transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

## A. Considerations of Convenience

The moving party bears the burden of showing that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citing *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 219–20 (citations omitted)). The court must consider the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses, and the location of relevant documents and sources of proof. *FUL Inc. v. Unified School District No. 204,* 839 F.Supp. 1307, 1311 (N.D.Ill. 1993) (citations omitted); *Gothelf v. California Ivy, Inc.,* No. 90 C 6976, 1992 WL 33928, at *2 (N.D.Ill. Feb. 13, 1992). Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Sage Products, Inc. v. Devon Industries, Inc.,* 148 F.R.D. 213, 216 (N.D.Ill.1993) (citations omitted).

### 1. Plaintiff's Choice of Forum

A plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum. *Gallery House, Inc. v. Yi,* 587 F.Supp. 1036, 1040 (N.D.Ill.1984) (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Ronco, Inc. v. Plastics, Inc., supra,* 539 F.Supp. 391). Indeed, a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor. *Peterson v. United States Steel Corp.,* 624 F.Supp. 44, 45 (N.D.Ill.1985) (citations omitted). Thus, the fact that CWM has brought this action in the Northern District of Illinois, its home forum, weighs heavily against transfer.

### 2. Access to Sources of Proof

CWM insists that most of the documents relevant to the breaches of warranties in the Stock Purchase Agreement and the costs of bringing DSSI into compliance are under its control and are either already in this district or can be easily transported here. The defendant shareholders claim that the majority of records relating to CWM's allegations are in Tennessee, but they fail to identify the precise judicial district in which these documents are located.[2] In any event, the court is satisfied that each party can easily bring to this district those documents that are not here already. Accordingly, this factor militates neither for nor against transfer.

### 3. Convenience of the Witnesses

The party seeking transfer must clearly specify the key witnesses to be called and make a general statement of their testimony. *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citations omitted). In determining whether a particular venue is more convenient to witnesses, a court should not limit its investigation to a review of which party can produce the longer witness list. Rather, a court should look to the nature and quality of the witnesses' testimony with respect to the issues in the case. *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 57 (N.D.N.Y.1990) (citations omitted); *see also*

---

2. This omission is significant because Kingston, the site of DSSI's headquarters and facilities, is located in the Eastern District of Tennessee, approximately one hundred and fifty miles from Nashville, the seat of the Middle District of Tennessee, Nashville Division.

WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 at 424–32 (1986).

In this case, Mr. Liff states that the defendant shareholders will seek the testimony of twenty non-party witnesses, all of whom reside in Tennessee, as well as unnamed officials working for federal environmental agencies in Atlanta, Georgia. However, his description of their testimony is extremely brief and vague, lacking any details concerning the length of the testimony which may be required of the witnesses or the relationship of the testimony to the issues in this case. *See, e.g. Aquatic Amusement Associates, Ltd. v. Walt Disney World Co., supra,* 734 F.Supp. at 58. Moreover, a large number of these witnesses reside within the Eastern District of Tennessee, over one hundred miles away from Nashville. These witnesses will be inconvenienced regardless of whether the action is transferred to the Middle District of Tennessee.

CWM states that it will seek the testimony of CWM and DSSI officials who supervised the repair of the defects at the Kingston facility, CWM and CNSI officials familiar with the costs of repairs, and experts who will explain the necessity for the repairs. CWM does not identify the names and locations of these witnesses, nor does it attempt to illustrate why the Northern District of Illinois is a more convenient forum for them. Since both sides have failed to demonstrate that the convenience of the witnesses favors their respective forums of choice, this consideration militates neither for nor against transfer.

#### 4. Convenience of the Parties

The defendant shareholders claim that all but two of them reside in Tennessee, and that all but one of them have neither traveled to Illinois in connection with this transaction nor conduct business of any kind in Illinois. CWM responds that because most of the defendant shareholders have little knowledge of the matters at issue, this case should not be transferred to the Middle District of Tennessee because these defendants are not likely to attend the trial in any event.

This Court does not share plaintiff's disregard for the prerogative of these defendants to attend the trial, the outcome of which could result in a judgment against them in an amount exceeding ten million dollars. Nevertheless, defendants' affidavits reveal that, of all the DSSI shareholders who are parties to this action, only Mr. Adam Liff, Mr. James Sims, and Mr. James McVey were actively involved in the operation of DSSI and are thus likely to testify at trial. Of these three individuals, only Mr. Liff resides in the Middle District of Tennessee.[3] Under these circumstances, transfer will merely shift the inconvenience from one party to the other. Accordingly, this factor weighs against transfer.

#### B. The Interest of Justice

The final consideration under § 1404(a) is whether a change of venue would serve the interest of justice. This factor focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Espino v. Top Draw Freight System, Inc.,* 713 F.Supp. 1243, 1245 (N.D.Ill. 1989) (citations omitted). Interest of justice considerations include "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citing *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 221).

#### 1. Ensuring A Speedy Trial

Plaintiff claims that the parties are likely to receive a speedier resolution of this case in the Northern District of Illinois than in the Middle District of Tennessee. To support this claim, plaintiff cites two statistics from the Federal Court Management Statistics Report: (1) the median number of months from filing to disposition of civil cases, and (2) the median number of months from issue to trial in civil cases. Of the numerous court management statistics available, these two measurements bear the most relevance to this analysis. *Applied Web Systems, Inc. v.*

---

**3.** Mr. McVey resides in Oak Ridge, located in the Eastern District of Tennessee approximately one hundred sixty miles from Nashville. Mr. Sims resides in Stanford, Kentucky, located approximately two hundred miles from Nashville.

*Catalytic Combustion Corp., supra,* No. 90 C 4411, 1991 WL 70893, at *8.

The Federal Court Management Statistics Report for the annual period ending September 30, 1993 indicates that the median time from filing to disposition of civil cases was five months in the Northern District of Illinois, compared to nine months in the Middle District of Tennessee. *See* ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, 1993 FEDERAL COURT MANAGEMENT STATISTICS, pp. 96, 101. During the same period, the median time from issue to trial in civil cases was thirteen months in the Northern District of Illinois, compared to fifteen months in the Middle District of Tennessee. *Id.* In other words, there is a four-month difference in median time from filing to disposition, and a two-month difference in median time from issue to trial, a discrepancy which suggests that the prospect of an earlier trial might lie within this district. As such, this consideration militates against transfer.

### 2. *Applicable Law*

Illinois choice of law rules will apply to this action irrespective of whether the court transfers this case. *See Providence Hospital v. Rollins Burdick Hunter of Illinois, Inc.,* 824 F.Supp. 131, 133 (N.D.Ill.1993) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964)). Illinois courts have long enforced agreements regarding choice of law absent compelling circumstances which warrant disregarding such agreements. *Applied Web Systems, Inc. v. Catalytic Combustion Corp., supra,* No. 90 C 4411, 1991 WL 70893, at *7 (citing *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1081 (7th Cir.1986); *Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.,* 706 F.Supp. 639, 641 (N.D.Ill. 1989)). In the case at bar, the Stock Purchase Agreement expressly provides that it will be "governed by and construed in accordance with" the laws of the State of Delaware. Opposition, Exhibit A, p. 31, § 12.9. Because Illinois courts are no more conversant with Delaware law than Tennessee courts, this consideration neither militates for nor against transfer.

### C. *Resolution*

Upon weighing these considerations, the court finds that this action should not be transferred to the Middle District of Tennessee. A defendant moving to transfer an action has the burden of proving that the considerations embodied in Section 1404(a) weigh heavily in favor of transfer. *Peterson v. United States Steel Corp.,* 624 F.Supp. 44, 45 (N.D.Ill.1985) (citations omitted). As the foregoing discussion illustrates, defendants have failed to meet this burden. Accordingly, this Court declines to disturb the plaintiff's choice of forum. Defendants' motion to transfer this action to the Middle District of Tennessee is denied.