**McDONALD'S CORPORATION, Plaintiff,**

**v.**

**Roberto BUKELE, and Servipronto De El Salvador, S.A., Defendants.**

**No. 96 C 4361.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 12, 1997.

States District Court for the Middle District of Tennessee was misplaced.

Carl A. Gigante, Foran & Schultz, Chicago, IL, James R. Figliulo, Peter A. Silverman, Figliulo & Silverman, Chicago, IL, for Plaintiff.

Gary C. Rosen and Ivan J. Reich of Becker & Poliakoff, P.A., Fort Lauderdale, FL, James J. Riebandt, Riebandt & Dewald, P.C., Arlington Heights, IL, Omar J. Arcia, Zarco & Associates, Miami, FL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This case arises from a dispute between McDonald's Corporation ("McDonald's") and one of its foreign franchisees. McDonald's is a Delaware corporation with its principal place of business in Oak Brook, Illinois. Defendant Servipronto De El Salvador, S.A. ("Servipronto") is an El Salvadoran company

with its principal place of business in San Salvador. Defendant Roberto Bukele is a resident of El Salvador and the president of Servipronto. Mr. Bukele has moved to dismiss McDonald's complaint on the ground that this Court does not have personal jurisdiction over him. He also seeks dismissal for insufficiency of process. Finally, he has moved for dismissal based on the doctrine of forum non conveniens or in the alternative to transfer venue. For the following reasons, the motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss on the grounds of forum non conveniens is granted, and the remaining motions are denied as moot.

## I. Background

In 1972, Puerto Rico Franchising Corporation ("Puerto Rico") was operating several McDonald's restaurants in El Salvador pursuant to a license from McDonald's. Puerto Rico, in turn, sub-licensed Servipronto to operate the restaurants. Mr. Bukele was an employee and officer of Servipronto. He travelled to Illinois on several occasions to meet with McDonald's representatives and discuss issues surrounding the operation and physical design of the restaurants. He also attended McDonald's Hamburger University, located in Illinois, for training.

In 1978, Servipronto became McDonald's direct licensee for the operation of three El Salvador restaurants. The three license agreements were negotiated and executed in El Salvador and were written originally in Spanish. In 1981, subsequent to the completion of those agreements, Mr. Bukele again travelled to Oakbrook to meet with McDonald's executives regarding royalty delinquencies and the difficult political situation prevalent in El Salvador at that time. As a result of this meeting, McDonald's and Mr. Bukele, personally and on behalf of the corporation, agreed to a temporary reduction in royalty payments, forgiveness of some past due royalties, and other operational issues. During the 1980's, Mr. Bukele continued to have periodic contact by phone and mail with individuals at McDonald's offices in Oak-

brook regarding various operational and payment issues.

Mr. Bukele concluded additional agreements with McDonald's in the 1980's and 1990's. In 1985 and again in 1987, Mr. Bukele, personally and on behalf of the corporation, signed promissory notes to McDonald's for loans and delinquent royalty payments. Furthermore, in 1989, Mr. Bukele, again personally as well as on behalf of the corporation, signed a letter agreement (the "1989 agreement") with McDonald's which permitted him to change the location of one of his restaurants and required that Mr. Bukele and Servipronto be in full compliance with all the terms of the licenses. In 1993, Mr. Bukele once again came to Illinois to discuss the extension or renewal of Servipronto's license agreements. Following that meeting, two agreements were reached involving Servipronto, Bukele, and McDonald's. In April 1994, McDonald's and Mr. Bukele signed a letter agreement[1] (the "1994 agreement") providing for the renewal of the restaurant licenses on the condition that the restaurants' physical appearances and facilities were upgraded. McDonald's also agreed to loan $1,000,000 to Mr. Bukele for the purposes of remodeling the restaurants. Finally, McDonald's gave Mr. Bukele interim approval to develop three additional restaurants in San Salvador if certain conditions were satisfied. Shortly thereafter, Mr. Bukele, individually, and McDonald's entered into a license agreement in November, 1994 for a restaurant in San Salvador located at La Calle Poniente y La Avenida Sur, Frente a Parque San Jose (the "San Jose restaurant"). The San Jose restaurant, however, ceased operations and was closed in June 1996.

In December 1995, McDonald's sent a letter to Mr. Bukele informing him that he had not complied with the requirements of the 1994 agreement. Therefore, McDonald's did not re-write the licenses for the three restaurants, but it did agree to extend the licenses until June 30, 1996 in an effort to provide Mr. Bukele and Servipronto with one last opportunity to bring those restaurants into

---

1. This letter agreement, unlike previous ones, does not specify whether Mr. Bukele signed it individually or on behalf of the corporation. The letter only contains his name on the signature line and no description afterwards.

compliance. The letter warned that McDonald's would enforce all of its rights unless the conditions set forth in the 1994 agreement were satisfied. McDonald's subsequently concluded that these conditions had not been met, and it instituted this diversity action against Mr. Bukele and Servipronto in this Court in July, 1996. McDonald's seeks an injunction prohibiting the defendants from the continued use of McDonald's systems, trademarks, service marks, and trade names and the return of all McDonald's proprietary information. It also seeks damages and a disgorgement of profits for the unauthorized use of McDonald's commercial name, trademarks, and service marks.

## II. Personal Jurisdiction

### A. Standard of Review

■ On a motion to dismiss for lack of personal jurisdiction, the party asserting jurisdiction, the plaintiff in this case, bears the burden of making a prima facie showing that jurisdiction is proper. *Chemical Waste Management v. Sims*, 870 F.Supp. 870, 873 (N.D.Ill.1994). When deciding such a motion, a court may accept affidavits submitted by both parties, but all factual disputes must be resolved in favor of the plaintiff. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988).

### B. Illinois Long–Arm Statute and Due Process Considerations

■ In a diversity action,[2] a federal district court in Illinois has personal jurisdiction over a party if an Illinois state court would have personal jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir.1990).

2. McDonald's asserted in its complaint that jurisdiction was based on 28 U.S.C. § 1332, the diversity statute.

3. In September 1989 Illinois amended its long-arm statute to allow the exercise of personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). Hence, a party's conduct need not fit under one of the enumerated categories because "jurisdiction under the Illinois long-arm statute is now co-extensive with the limits of due process." *Chemical Waste*, 870 F.Supp. at 873.

Under the Illinois long-arm statute, non-residents are subject to the jurisdiction of the Illinois courts if their conduct falls into one of several categories. The relevant provisions of the statute state:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

. . .

(7) The making or performance of any contract or promise substantially connected with this State;

. . .

(f) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a).

735 ILCS 5/2–209(a)(1)(7) & (f). Moreover, even if jurisdiction exists under the long-arm statute, a court must determine whether the exercise of personal jurisdiction would meet the requirements of constitutional due process. *Heritage House*, 906 F.2d at 279.[3]

### C. Transaction of Business and Substantially Connected Contracts

■ Turning to the analysis, the first question is whether Mr. Bukele's conduct fits into one of the above-listed categories. When determining whether a party has transacted business in Illinois, courts consider several factors such as which party initi-

In this case, however, I must apply the pre–1989 version of the long-arm statute. Much of the conduct, including the negotiation and execution of the licenses which form the basis of this action, which might link Mr. Bukele to Illinois occurred prior to 1989. Other courts have concluded that the amended version of the long-arm statute should not be applied to conduct which occurred prior to its enactment. See *Bankers Leasing Assoc., Inc. v. Tompkins, McGuire & Wachenfeld*, 734 F.Supp. 309, 311–12 (N.D.Ill.1990); *Stenograph Corp. v. Fulkerson*, No. 90 C 7335, 1991 WL 30123, at *3 (N.D.Ill. Mar.4, 1991). I agree with these decisions.

ated the transaction, where the contract was negotiated and executed, and where performance of the contract was to occur. *Gordon v. Tow,* 148 Ill.App.3d 275, 101 Ill.Dec. 394, 398, 498 N.E.2d 718, 722 (1986). Although these factors are significant, none of them are dispositive, and "the court should look at the totality of the circumstances to determine whether defendant transacted business in the state." *North Am. Philips Corp. v. American Vending Sales, Inc.,* No. 93 C 3261, 1993 WL 473630, at *11 (N.D.Ill. Nov.15, 1993).

These initial factors weigh against the exercise of personal jurisdiction by this Court. In the instant case, it is undisputed that McDonald's initially contacted Mr. Bukele and Servipronto to enter into these licenses due to the difficulties it had encountered with the previous licensee. Bukele Aff. 9/16/96 ¶ 6. In addition, all three license agreements were negotiated and executed in El Salvador. *Id.* ¶ 4. Furthermore, performance of the agreements was to take place primarily in El Salvador. In fact, even the payments that Servipronto made to McDonald's were deposited in a bank account maintained by McDonald's in San Salvador. *Id.* ¶ 9. The only part of these agreements that had anything to do with Illinois is the fact that McDonald's is located here and may have performed its part of the contract in Illinois by providing advice and support from its Oakbrook headquarters. This fact, however, is irrelevant because the inquiry focuses on what Bukele did in Illinois and not what McDonald's did. *See Asset Allocation and Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 569 (7th Cir.1989).

■ Other considerations also argue against jurisdiction over Mr. Bukele. All three licenses specify that El Salvadoran law will govern their interpretation. Although a choice of law provision standing alone cannot grant or defeat jurisdiction, it may be considered as part of the analysis. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 2187, 85 L.Ed.2d 528 (1985); *Hedge Associates, Inc. v. Ferraz Corp.,* No.

95 C 4042, 1996 WL 37680, at *5 (N.D.Ill. Jan.26, 1996). Moreover, several of the contacts and visits which Mr. Bukele had with McDonald's personnel in Illinois, see Hadland Aff. ¶¶ 4–13, occurred either before Servipronto became the licensee or in Mr. Bukele's capacity as president of Servipronto. Personal jurisdiction cannot be based on these actions because Mr. Bukele is being sued individually, and he "must be distinguished from the corporation of which he is an officer and a majority shareholder." *Berg v. Anderson,* No. 95 C 1664, 1995 WL 476671, at *5 (N.D.Ill. Aug.8, 1995). The fiduciary shield doctrine, which prevents the exercise of personal jurisdiction over a defendant based solely on his contacts with Illinois as a fiduciary of a corporation, bars the Court's consideration of Mr. Bukele's conduct in that role. *Olinski v. Duce,* 155 Ill.App.3d 441, 108 Ill.Dec. 237, 239, 508 N.E.2d 398, 400 (1987). Hence, any contact that Mr. Bukele had with McDonald's personnel prior to 1978 and those contacts which were made on behalf of Servipronto may not be considered.

Nevertheless, Mr. Bukele, individually, has had contacts with and made visits to McDonald's personnel in Illinois. In 1981, he travelled to Oakbrook and met with officials of McDonald's to seek a reduction in royalty payments and other alterations in the licenses for the restaurants. Hadland Aff. ¶ 8. That meeting led directly to a letter agreement, which Mr. Bukele signed individually and on behalf of the corporation, modifying certain terms of the licenses.[4] McDonald's Resp. Ex. C. No. 7. Furthermore the 1989 agreement, in which Mr. Bukele again was acting both on behalf of the corporation and individually, provided that the newly relocated restaurant's physical construction and design would be in accordance with plans that McDonald's previously had approved. *Id.* Ex. C No. 4. It also required that Mr. Bukele and Servipronto generally be in full compliance with all the terms of the licenses. This agreement is directly related to McDonald's present suit because McDonald's terminated the licenses based on the failure of Servi-

---

4. Although McDonald's suit is not based on this particular agreement, the agreement concerns the parties' performance under the licenses which are the subject of this suit. Accordingly, as discussed in greater detail later, McDonald's cause of action is connected to and arises from Mr. Bukele's act of making this agreement.

pronto and Mr. Bukele to bring the restaurants up to McDonald's specified standards.

■ One other important fact tips the scales in favor of the conclusion that Mr. Bukele transacted business in Illinois. Mr. Bukele entered into a long-term, comprehensive agreement with McDonald's, thereby creating an on-going relationship with an Illinois corporation which continued up to the time of this suit. Although Servipronto is the actual licensee on the three licenses, Mr. Bukele also agreed, at the time the agreements were executed, to personally guarantee several of the clauses in the licenses which require compliance with the McDonald's system. *Id.* Ex. D.[5] Thus, considering Mr. Bukele's "voluntary acceptance of the long-term and exacting regulation of his business" from McDonald's Oakbrook headquarters, "the 'quality and nature' of his relationship to the company in [Illinois] can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " *See Burger King,* 471 U.S. at 480, 105 S.Ct. at 2186.[6] Based on the above considerations, I find that Mr. Bukele has transacted business in Illinois under Section 2–209(a)(1) of the long-arm statute.

■ For similar reasons, the 1978 license agreements and the subsequent letter agreements which modify them are contracts that are substantially connected to Illinois. Although aspects of the solicitation, negotiation, execution and performance of these contracts occurred outside of Illinois, these contracts created long-term obligations between Mr. Bukele and McDonald's. Not only were these extended obligations, but they also were obligations which further intertwined Mr. Bukele and McDonald's. McDonald's was involved in a supervisory role over many of the business activities of Mr. Bukele's restaurants, and the licenses required that Mr. Bukele seek McDonald's permission, which he did on several occasions as evidenced by the 1981 and 1989 letter agreements, to make any changes in the restaurants' operations. Therefore, I also find that Mr. Bukele's actions are covered by Section 2–209(a)(7) of the long-arm statute.

### D. Cause of Action Based on Defendant's Conduct

■ In order to base specific personal jurisdiction on the acts of a non-resident defendant, the plaintiff's cause of action must arise from those acts. *See Heritage House,* 906 F.2d at 281. In other words, the claim must "lie[ ] in the wake of the commercial activities by which [the] defendant submitted to the jurisdiction of the Illinois courts." *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984) (quoting *Loggans v. Jewish Community Ctr. of Milwaukee,* 113 Ill.App.3d 549, 557, 69 Ill.Dec. 484, 490, 447 N.E.2d 919, 925 (1983)). The conduct of Mr. Bukele meets this standard.

First, the clauses of the licenses that Mr. Bukele personally guaranteed are relevant to the present controversy. Mr. Bukele argues that McDonald's claims only arise from the termination clause of the license. Although the termination clause grants McDonald's certain rights upon the termination of the licenses, the reasons for McDonald's invocation of the termination clause are due to Mr. Bukele's alleged failure to comply with those clauses of the license which he guaranteed personally. These clauses are part of the overall relationship between Mr. Bukele and McDonald's and therefore are located in the "wake" of his conduct which created a con-

---

5. The McDonald's System is a comprehensive plan for the operation of McDonald's restaurants. This System covers all aspects of the business ranging from the interior design of the restaurants to the ingredients of the food to the hours of operation.

6. The Court is mindful that several of the circumstances that led the Supreme Court to find the existence of personal jurisdiction in *Burger King* are not present in this case. For example, in *Burger King,* the contract specified that Florida law would govern the agreement, and the Court

reasoned that this fact combined with the long-term relationship justified the exercise of personal jurisdiction. 471 U.S. at 481–82, 105 S.Ct. at 2186–87. Here, El Salvadoran law is to govern the contract. Nevertheless, circumstances exist in this case that did not exist in *Burger King* which do support the exercise of personal jurisdiction. Mr. Bukele has made personal visits to Illinois and has had contacts with McDonald's headquarters by mail and phone which the defendant in *Burger King* had not done. 471 U.S. at 479, 105 S.Ct. at 2185–86.

tinuing and extensive link between himself and McDonald's. *See Deluxe Ice Cream*, 726 F.2d at 1215.[7]

Mr. Bukele's other conduct which is connected to Illinois, namely the modification of the licenses by means of the 1981 and 1989 letter agreements, also gives rise to McDonald's claims. Both of these agreements were signed by Mr. Bukele individually. Although McDonald's is not suing Mr. Bukele directly on these letter agreements, they comprise part of the ongoing relationship in which these two parties were enmeshed. "[T]he relationship between the transaction and the claim is particularly strong where there is an ongoing business relationship between an out-of-state defendant and a resident corporation," *Heritage House*, 906 F.2d at 281. Hence, McDonald's claims do arise from Mr. Bukele's transactions in Illinois.

*E. Due Process*

The final step in the personal jurisdiction analysis is to determine whether the exercise of jurisdiction over a non-resident defendant would comport with due process. *See John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 404 (7th Cir.1987). The due process inquiry has two parts. First, the defendant must have "purposely established 'minimum contacts' in the forum State.'" *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). These minimum contacts must "result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. at 2184 (citations omitted). The defendant's connection to the State must be substantial enough that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ In this case, Mr. Bukele has established minimum contacts with Illinois. Mr. Bukele entered a twenty year franchise

agreement with a resident corporation, negotiated and executed modifications to that agreement, and directed communications to Illinois through the gtelephone and mail. Accordingly, he "has created 'continuing obligations' between himself and residents of the forum," and therefore "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

Although Mr. Bukele does have sufficient minimum contacts with Illinois, the Court, in the second part of the due process inquiry, must consider if, in light of those minimum contacts and some other considerations, the exercise of personal jurisdiction would offend " 'traditional notions of fair play and substantial justice.' " *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). The "other considerations" which the Court must take into account include "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). An additional concern is present in this case because Mr. Bukele is a citizen of a foreign country. " 'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Id.* at 115, 107 S.Ct. at 1034 (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan J., dissenting)).

■ Given these considerations and concerns, I still find that the exercise of personal jurisdiction in this case would not offend traditional notions of fair play and substantial justice. In this case, Mr. Bukele's minimum contacts are significant enough to overcome the dangers of reaching across borders. Mr. Bukele not only initially entered into a twenty-year relationship with a corporate resident of Illinois, but he sought modifica-

---

**7.** I will not, however, consider the 1985 and 1987 promissory notes in the jurisdictional analysis. McDonald's cause of action has nothing to do with these notes. *See Berg*, 1995 WL 476671,

at *6. For the same reasons, I also will not consider the San Jose restaurant license. That restaurant was closed in June, 1996, see Bukele Aff. ¶ 7, and is not the subject of this suit.

tions and extensions of that relationship when he encountered difficulties. Furthermore, he has visited Illinois several times in the course of his business relationship with McDonald's, thereby demonstrating that he can travel to Illinois when necessary in order to protect his interests. Accordingly, the motion to dismiss for lack of personal jurisdiction is denied.

### III. Forum Non Conveniens

The finding in favor of personal jurisdiction, however, does not dispose of all of the issues confronting the Court. Mr. Bukele also has filed a motion to dismiss based on the doctrine of forum non conveniens. When deciding a forum non conveniens motion, the Supreme Court has directed that a court should consider both the private interests of the litigants and the public interests of the forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The private interests to be considered include the

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Id.*

The public interests relevant to the determination include the administrative burden on congested courts, the imposition of jury duty on citizens in a community which has no relation to the action, the local interest in deciding localized controversies, and the appropriateness of having a court in a forum that "is at home with the ... law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508–09, 67 S.Ct. at 843.

A district court has discretion and " 'substantial flexibility' " when considering these factors. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir.1990) (cit-

ing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988)). Nevertheless, a plaintiff's choice of forum should be given deference, particularly in a case such as this one where a United State corporation has chosen its home forum to pursue its action. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). The defendant must overcome this presumption by demonstrating that the "private and public interest factors clearly point towards trial in the alternative forum." *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir.1982). Despite this burden, "[a] citizen's choice of forum should not be given dispositive weight.... As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23 (citations omitted).

■ In the instant case, a trial in this forum would be unnecessarily burdensome for both Mr. Bukele and the Court. As a threshold matter, an adequate alternative forum must exist in which McDonald's could pursue this case. That forum may be found in El Salvador, where, as discussed later, McDonald's presently is prosecuting a suit against Mr. Bukele related to the operation of another restaurant. McDonald's Resp. at 6. McDonald's has not argued that El Salvador would be an inadequate forum in this case.

### A. Private Interests

The private factors in this case favor dismissal. Although McDonald's witnesses reside in Illinois or would be willing to come to Illinois to testify, Figliulo Aff. ¶ 1, none of Mr. Bukele's witnesses reside in the United States, and most of them reside in El Salvador and other Central American countries. Bukele Aff. 10/21/96 ¶¶ 11–12. Hence, this Court would lack the ability to compel testimony from these witnesses. Moreover, even if witnesses were willing to testify, the cost of obtaining their testimony would be prohibi-

tive, both in terms of travel and translation of their testimony from Spanish to English.[8]

Contrary to McDonald's arguments, the testimony of many of Mr. Bukele's witnesses probably will be necessary to resolve this dispute. McDonald's has argued that Mr. Bukele's interpretation of the claims in this suit is overly broad. It claims that Mr. Bukele has no need to present witnesses regarding his compliance with the terms of the licenses because the case is simply about the continued operation of the restaurants after the licenses expired and the resulting damages. McDonald's argument, however, tries to advance both its own claims as well as limit the defenses which Mr. Bukele may present. This it cannot do.

Mr. Bukele has stated that he intends to contest the validity of the termination of the licenses by McDonald's in light of their 1994 agreement. *Id.* ¶¶ 9–10. McDonald's alleges that Mr. Bukele had not performed his obligations under the 1994 agreement. Specifically McDonald's claims that Mr. Bukele and Servipronto were using frozen beef patties and several other products that did not conform to McDonald's specifications and that the store remodeling process had not been completed satisfactorily. Complaint ¶ 25(b)(c)(e)(f).

Mr. Bukele asserts that he was in compliance with the 1994 agreement and is entitled to present proof of his compliance to demonstrate that McDonald's termination was unjustified. To that end, Mr. Bukele has named several witnesses, including his suppliers for the raw food products and the architect working on renovating the stores in San Salvador, who will testify on his behalf. (Bukele Aff. 10/21/96 ¶¶ 10–12). All of these witnesses, however, live outside of the United States. *Id.* McDonald's proposed solution to the foreign witness problem does not change the Court's analysis. McDonald's suggests that foreign witness' testimony may be received through depositions and the letters rogatory process. Even if these forms of testimony were as desirable as live testimony, the possibility of losing key testimony due to an inability to compel cooperation will remain if this suit proceeds in the Northern District. *Martin v. Vogler,* No. 93 C 3870, 1993 WL 462853, at *3 (N.D.Ill. Nov.9, 1993). Thus, the lack of availability of compulsory process over many of the witnesses and the expense involved in securing their testimony is a significant factor pointing toward dismissal. *See Maljack Productions, Inc. v. British Pathe News Ltd.,* No. 93 C 7767, 1994 WL 270268, at *6 (N.D.Ill. June 15, 1994) (dismissing case on forum non conveniens grounds where defendant's witnesses were located in foreign country even though plaintiff's witnesses were located in the United States).

In addition, a view of the premises may be necessary or at least helpful in this case. Many of McDonald's problems with Mr. Bukele's operation of the restaurants relate to the physical facilities and interior design of the buildings. Complaint, Ex. A ¶¶ 1, 4, Ex. B. In fact, the 1994 agreement specified certain actions that Mr. Bukele agreed to take with respect to remodeling and upgrading the physical facilities in return for McDonald's re-writing the licenses. *Id.* Ex. A. ¶ 4. McDonald's did not believe that Mr. Bukele had met these conditions, and presumably that is the reason it terminated the licenses. *Id.* Ex. B. Mr. Bukele, however, contends that he did meet these conditions.

Furthermore, McDonald's is seeking injunctive relief as well as damages. Even if this Court issued an injunction against the defendants' continued operations, McDonald's would need to resort to the El Salvadoran courts in order to obtain actual relief in El Salvador.

Finally, McDonald's has demonstrated its willingness and ability to pursue a suit such as this one in a court in El Salvador. In April 1996 McDonald's sued Mr. Bukele and Servipronto in El Salvador concerning Servipronto's operation of another restaurant in San Salvador. Bukele's Memorandum In Support at 5; McDonald's Resp. at 6. Mc-

---

**8.** Although the parties did not argue this point in detail, presumably many of Mr. Bukele's witnesses do not speak English or are not as proficient in English as would be necessary for a jury to understand their testimony fully. Indeed, for this motion, all of the affidavits submitted by Mr. Bukele as well as the 1978 licenses required translation.

Donald's states that the issues and relief it seeks in the suit in El Salvador are not related to the issues surrounding the three restaurants in the instant case. Yet both cases involve identical parties and at least similar issues concerning the operation of restaurants and the unauthorized use of trademarks by Mr. Bukele and Servipronto. Bukele Aff. 9/16/96 ¶ 18.

I conclude that El Salvador would be a better forum for this dispute. The private interests of the litigants all point toward El Salvador.

### B. Public Interest

The public interest in keeping this case in this forum is slight. The only real connection that the people of the Northern District of Illinois have to this case is that McDonald's maintains its principal place of business here. Otherwise, this case is about an El Salvadoran franchisee who operates restaurants exclusively in El Salvador. Any unauthorized or infringing use of trademarks and other intellectual property occurs only in El Salvador, not in this district and not even in the United States.[9] Hence, this case does not present much of a localized controversy. Besides this over-arching lack of local interest, one other specific public interest factor clearly favors dismissal.

This Court has no familiarity with the law involved in this case. The 1978 licenses at issue in this case contain a choice of law provision stating that they are gov-

erned by El Salvadoran law.[10] See McDonald's Response to Motion to Dismiss for Lack of Personal Jurisdiction, Ex. D, No. 3. When necessary, a court can interpret and apply foreign laws to a controversy, and "the application of foreign law alone does not suffice to justify dismissal for forum non conveniens...." *Martin,* 1993 WL 462853, at *4. In the case at bar, however, application of foreign law is not necessary because this case can be handled by an El Salvadoran court. Moreover, if this case were to remain before this Court, the laws of El Salvador, a civil law country, would have to be translated, or, at the least, made the subject of expert testimony, prior to any interpretation or application of those laws. *See Interpane Coatings v. Australia and New Zealand Banking Group Ltd.,* 732 F.Supp. 909, 917 (N.D.Ill. 1990). Therefore, the application of El Salvadoran law by this Court would "impose[ ] a heavy burden ... and render[ ] litigation substantially more inconvenient." *Martin,* 1993 WL 462853, at *4.[11]

Thus, both the private and public interests reveal that El Salvador would be a better forum for this case. Mr. Bukele has carried his burden, and his motion to dismiss for forum non conveniens is granted.[12]

### IV. Conclusion

Mr. Bukele's motion to dismiss for lack of personal jurisdiction is denied. He has transacted business in Illinois and made contracts which are substantially connected to

9. The economic impact on McDonald's in Illinois, standing alone and without other conduct in the State, does not create a strong local interest in this case. In similar circumstances, Judge Nordberg refused to extend personal jurisdiction over a defendant who committed alleged tortious acts outside of Illinois that may have had an adverse economic impact within Illinois. *System Software Assocs. v. Trapp,* No. 95 C 3874, 1995 WL 506058, at *8 (N.D.Ill. Aug.18, 1995).

10. The licenses have an express choice of law provision. Under Illinois law, an express choice of law provision will not be given effect if "it would both violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen [forum]." *English Co. v. Northwest Envirocon, Inc.* 278 Ill.App.3d 406, 215 Ill.Dec. 437, 441, 663 N.E.2d 448, 452 (1996). I already have found that Illinois does not have a materially greater interest

in this litigation than El Salvador. Furthermore, McDonald's has not argued, nor do I see any argument, that this choice of law provision would violate Illinois public policy.

11. Neither party has discussed the issue of whether the courts of this district or the courts of El Salvador are more congested. Nevertheless, I would note that the need for extensive translation of documents, testimony, and the laws of El Salvador would slow the progress of this case considerably.

12. Mr. Bukele, and not Servipronto, is the moving party for this motion. Nevertheless, I am dismissing the entire case, including Servipronto, because the same forum non conveniens analysis would apply to it. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991).

Illinois, and the exercise of jurisdiction would not offend due process. Mr. Bukele's motion to dismiss for forum non conveniens, however, is granted. His remaining motions, to quash process, to dismiss for insufficiency of process, and to transfer venue, are denied as moot.